# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

OSCAR SERRANO,                )
                                   )
        Movant,            )
                                   )
v.                            )        No. 3:19-cv-00719
                                   )        Judge Trauger
                                   )
UNITED STATES OF AMERICA,   )
                                   )
        Respondent.     )

## <u>MEMORANDUM</u>

The movant, Oscar Serrano, through counsel, filed this action under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Docket Entry No. 1). The movant seeks to vacate his conviction and correct his sentence for using or carrying a firearm during and in relation to a crime of violence and in furtherance thereof, to wit: a conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 924(c). (Docket Entry No. No. 1.) For the following reasons, the motion to vacate will be granted.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On February 22, 2008, a federal grand jury indicted the movant and two co-defendants in a fifteen-count Third Superseding Indictment. (Criminal Case No. 3:07-cr-00005, Docket Entry No. 770.) The Third Superseding Indictment charged the movant in six counts. Count One charged the movant with Racketeer Influenced Corrupt Organization ("RICO") conspiracy in violation of 18 U.S.C. § 1962(d). *Id*. at 1-13. Count Three charged the movant with assault with a dangerous weapon in aid of racketeering activity in violation of 18 U.S.C. §§ 1959(a)(3) and 2. *Id*. at 15. Count Four charged him with attempted murder in aid of racketeering activity in violation of 18

U.S.C. §§ 1959(a)(5) and 2. *Id*. at 16. Count Five charged him with attempting to kill a witness in

violation of 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(3)(B), 1512(k) and 2. *Id*. at 17. Count Six charged

the movant with carrying, using, and discharging a firearm during and in relation to a crime of

violence in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. *Id*. at 18. The predicate crimes of violence

alleged in Count Six were "assault with a dangerous weapon in aid of racketeering activity,

attempted murder in aid of racketeering activity, and witness tampering, as set forth in Counts Three,

Four, and Five." *Id*. Count Fifteen charged the movant with possessing, carrying, and using a

firearm during and in relation to a crime of violence and in furtherance thereof, to wit: a conspiracy

to participate in a racketeering enterprise, as set forth in Count One, in violation of 18 U.S.C. §§

924(c)(1)(A) and 2. *Id*. at 27.

On July 28, 2008, pursuant to the parties' binding plea agreement under Fed. R. Crim. P.

11(c)(1)(C), the movant pled guilty to Counts One and Fifteen, charging conspiracy to conduct and

participate in the activities of a racketeering enterprise and knowingly discharging a firearm during

and in relation to a crime of violence, in exchange for which the government agreed to dismiss

Counts Three, Four, Five, and Six of the Third Superseding Indictment. *Id*., Docket Entry No. 885,

at 2. The parties agreed to the sentencing guideline range of 360 months to life, but that each party

was free to recommend whatever sentence it deemed appropriate and that the court was free to

impose any sentence within the statutory maximum. *Id*. at 13. According to the facts in the plea

agreement, the movant agreed to the following:

> On or about December 18, 2005, OSCAR SERRANO, a/k/a "Diablin," and fellow
> MS-13 members went to the Club Ibiza nightclub and attempted to kill rival gang
> members by shooting several firearms at them.

On or about February 17, 2006, OSCAR SERRANO, a/k/a "Diablin," and fellow MS-13 members conspired to kill rival members by shooting them at the International Ballroom nightclub.

In or about the spring of 2006, OSCAR SERRANO, a/k/a "Diablin," and fellow MS-13 members attempted to kill rival gang members by shooting firearms at them at the intersection of Nolensville and Glenrose Roads.

On or about May 21, 2006, OSCAR SERRANO, a/k/a "Diablin," along with fellow MS-13 members, . . . drove to an apartment complex in Nashville, Tennessee, to confront a Honduran MS-13 member who had failed to attend MS-13 meetings. However, while the group was there, they spotted an individual they believed to belong to the rival gang Brown Pride. Serrano and other members of MS-13 fired handguns in the direction of the individual, who was on a balcony, striking the individual in the arm. Serrano and the others then left the area.

On or about May 22, 2006, OSCAR SERRANO, a/k/a "Diablin," along with fellow MS- 13 member, Jose Alfaro, a/k/a "Liche," and other MS-13 gang members, went to an apartment complex in Nashville, Tennessee, and confronted an individual they suspected was a confidential informant who had previously provided information about MS-13 activities in Maryland to federal law enforcement authorities in Maryland. Serrano and others in his group ordered the individual to join them in fighting a group of Brown Pride rival gang members in the area. When the individual refused and ran away, Alfaro fired a handgun at the individual. The individual was not injured by the shooting.

*Id.* at 7-9. At the plea hearing, the movant admitted under oath that the facts as stated in the plea agreement were true. *Id.*, Docket Entry No. 1046, at 9, 30.

The plea agreement also included a waiver of appellate rights provision that stated:

Defendant further understands he is waiving all appellate rights that might have been available if he exercised his right to go to trial. It is further agreed that (i) defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the statutory maximum penalty of life imprisonment and (ii) the government will not appeal any sentence imposed. Such waiver does not apply, however, to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.

*Id.*, Docket Entry No. 885, at 14-15.

At the plea hearing, as to the waiver of appellate rights provision, the court explained:

3

> Bottom line is, Mr. Serrano, you are waiving your right to appeal the sentence or to file a separate case attacking the sentence of any sentence [sic] that's within or below statutory maximum penalty of life imprisonment. However, your waiver doesn't apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.

*Id.*, Docket Entry No. 1046, at 21. The court accepted the guilty plea and approved the Plea Agreement. *Id.*, Docket Entry No. 882.

The movant subsequently requested a sentence of 360 months, while the government requested a sentence of life. *Id.*, Docket Entry Nos. 991 and 992. On November 10, 2008, the court sentenced the movant to two hundred forty months on Count One and life on Count Fifteen to run consecutively to Count One, for an effective sentence of life imprisonment. *Id.*, Docket Entry No. 1002; Docket Entry No. 1043, at 163. In explaining its reasons for its decision, the court stated, in part, the following:

> Mr. Serrano has engaged in very serious and violent crimes and encouraged other such crimes as a leader of MS-13. There is a need to protect witnesses and victims and their families from Mr. Serrano. Just looking at the plea agreement, Mr. Oscar Serrano has participated in at least four attempted murders. They are set out on pages 6 through 10, and they are summarized on page 10 of the plea agreement.
>
> Mr. Serrano has directed the discharge of a firearm during and in relation to an attempted murder of a confidential informant, and that's part of the plea agreement on pages 6 and 7.

*Id.*, Docket Entry No. 1043, at 164.

The movant timely appealed his sentence, contending that his life sentence on the firearm charge was unreasonable and violated the Eighth Amendment. *Id.*, Docket Entry No. 1010; Docket Entry No. 1049, at 2. On September 29, 2010, the Sixth Circuit granted the government's motion to dismiss the appeal based on the appellate-waiver provision in the plea agreement. *Id.*, Docket

4

Entry No. 1049, at 1-2.  The court first found that the movant's plea agreement was valid, as his plea was knowing and voluntary.  *Id*. at 3.  As to the appellate rights waiver, the court stated:

> In his written plea agreement, Serrano waived all appellate rights that might have existed if he had gone to trial. He specifically stipulated that he would not appeal "any sentence within or below the statutory maximum penalty of life imprisonment." Although the district court imposed consecutive prison terms of twenty years for the racketeering charge and life for the firearms charge, in its judgment the court nonetheless recognized a "total term" of life imprisonment. This sentence falls "within or below the statutory maximum penalty," in accordance with the plea agreement's appellate-waiver provision. *See* 18 U.S.C. §§ 924(c), 1963(a).

*Id*. at 3-4.  The court also found that none of the exceptions included in the waiver provision applied. *Id*. at 4.

In April 2012, the movant filed a *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  (Civil Case No. 3-12-cv-00356, Docket Entry No. 1.)  The movant argued that his conviction should be vacated because he received the ineffective assistance of counsel, asserting various grounds.  *Serrano v. United States*, No. 3:12-0356, 2013 WL 361082, at *1, 3-6 (M.D. Tenn. Jan. 29, 2013).  On January 29, 2013, the court denied the movant's motion and denied granting a certificate of appealability.  *Id*. at *7.  On August 23, 2013, the Sixth Circuit denied the movant's application for a certificate of appealability.  (Civil Case No. 3-12-cv-00356, Docket Entry No. 59, at 3.)

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591, 606 (2015), holding that imposing an increased sentence under the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), violated the Constitution's guarantee of due process.  On June 13, 2016, the movant filed a second motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, arguing, in essence, that his conviction under § 924(c) for using or carrying a firearm

5

during and in relation to a crime of violence in Count Fifteen was invalid in light of *Johnson* because *Johnson* effectively invalidated the residual clause of 18 U.S.C. § 924(c)(3)(B), the only clause under which RICO conspiracy could qualify as a predicate crime of violence as charged in Count Fifteen. (Civil Case No. 3-16-cv-01348, Docket Entry No. 1; Docket Entry No. 8.)  The Sixth Circuit denied the movant's motion for authorization to proceed with a second or successive motion to vacate based upon circuit precedent, citing *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016), which foreclosed the argument that *Johnson* should be extended to invalidate the residual clause of § 924(c)(3)(B).  *Id.*, Docket Entry No. 8, at 2.

On June 24, 2019, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), which invalidated § 924(c)(3)'s "residual" clause.  In light of *Davis*, on August 16, 2019, the movant filed his instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 in the civil action now before the undersigned.[1]  (Civil Case No. 3-19-cv-00719, Docket Entry No. 1.)  The movant sought authorization from the Sixth Circuit to file a second or successive 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, contending that, after *Davis*, his RICO-conspiracy offense no longer qualified as a predicate "crime of violence" supporting his § 924(c) conviction because the Supreme Court held that the definition of "crime of violence" in § 924(c)(3)(B)'s residual clause was unconstitutionally vague.  (Docket Entry No. 4, at 3.)  The government opposed the movant's request, arguing that the collateral-attack waiver in his plea agreement barred him from § 2255 relief.  *Id.*  In reply, the movant argued (1) that consideration of the waiver provision was inappropriate in deciding a motion for authorization where a movant must show only that his

_____

[1]All previous criminal and civil actions involving the movant were before now-retired Judge Todd J. Campbell.

proposed § 2255 motion either relied on newly discovered evidence that would have prevented the factfinder from convicting; or a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; (2) that the waiver prevented him from challenging collaterally only his sentence, not his conviction; and (3) that a motion for authorization was not the place to resolve the tension in circuit precedents concerning collateral-attack waivers. *Id*. at 3, 4.

The Sixth Circuit agreed with the movant's third argument, stating that, because the government conceded the merits of the movant's proposed § 2255 motion and because his waiver of collateral review arguably did not bar his claim under certain Sixth Circuit case authority, the movant's motion met the requirements for authorization. *Id*. at 5. Accordingly, the Sixth Circuit granted the movant's motion for authorization to file a second or successive § 2255 motion and transferred the action to this court. *Id*. The respondent subsequently filed a response (Docket Entry No. 13), to which the movant filed a reply (Docket Entry No. 16).

## II. THE INSTANT MOTION

The movant seeks to vacate his § 924(c) conviction in Count Fifteen of the Third Superseding Indictment. Specifically, the movant asserts that, because the Supreme Court determined in *Davis* that the definition of a "crime of violence" in § 924(c)'s residual clause is unconstitutionally vague, his RICO-conspiracy offense can no longer qualify as a predicate "crime of violence" under the residual clause and, therefore, his conviction on Count Fifteen must be vacated. (Docket Entry No. 1, at 4-7.) In response, the respondent asserts that, even assuming that the movant is correct about the status of RICO conspiracy as a § 924(c) predicate, the movant is still not entitled to relief because (1) in his plea agreement he knowingly and voluntarily waived the right to collaterally attack his

sentence pursuant to 28 U.S.C. § 2255 and (2) he procedurally defaulted his *Davis* claim and cannot show cause and prejudice or actual innocence to excuse his procedural default. (Docket Entry No. 13, at 1-2, 8-9.) In reply, the movant argues that he can overcome procedural default by showing cause and prejudice, and that the collateral-attack waiver does not bar relief as the waiver is unenforceable and the waiver, by its own terms, does not bar a *Davis* attack on a conviction. (Docket Entry No. 16, at 2, 4, 6.)

## III.  LEGAL FRAMEWORK

### A.  28 U.S.C. § 2255

Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief under § 2255, a movant "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165

8

F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

A motion under § 2255 is subject to a one-year statute of limitations, running from the latest of four possible triggering events, including "the date on which the judgment of conviction becomes final" and "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(1), (3).

If a factual dispute arises in a § 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). However, "there is no reason to conduct an evidentiary hearing to resolve a purely legal issue." *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983). Here, the movant's § 2255 motion only presents legal issues, rather than factual ones. Thus, having reviewed the pleadings, briefs, and records filed in the movant's underlying criminal case, as well as the filings in this case, the court finds it unnecessary to hold an evidentiary hearing.

### B. 18 U.S.C. § 924(c)

Section 924(c) provides enhanced penalties for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1)(A). An individual convicted of a crime of violence during which a firearm is discharged is subject to a mandatory minimum sentence of ten years "in addition to the punishment provided" for the underlying crime of violence. 18 U.S.C. § 924(c)(1)(A)(i), (iii). Section 924(c)(3) defines "crime of violence" as "an offense that is a felony" and that:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Courts commonly refer to § 924(c)(3)(A) as the "force clause" or "elements clause" and to § 924(c)(3)(B) as the "residual clause."

In *Johnson v. United States*, the Supreme Court invalidated the so-called residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii),[2] as unconstitutionally vague under the Due Process Clause of the Fifth Amendment. 576 U.S. at 606. The Supreme Court later held that *Johnson* was a substantive decision that applied retroactively on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

The similarities between the residual clauses in § 924(c)(3)(B) and § 924(e)(2)(B)(ii) gave rise to the question of whether *Johnson* had the effect of invalidating the former as well as the latter. The Sixth Circuit initially held that the "residual clause" in 18 U.S.C. § 924(c)(3)(B) was not affected by *Johnson* and was still valid. *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 1975 (May 14, 2018), *rehr'g denied*, 138 S. Ct. 2646 (June 11, 2018).

---

[2]The ACCA defined "violent felony" as follows:

any crime punishable by imprisonment for a term exceeding one year . . . that--

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B)(i)-(ii). The italicized closing words of this definition are known as the residual clause.

10

However, on June 24, 2019, in *United States v. Davis*, the Supreme Court held that § 924(c)(3)(B), like the ACCA's residual clause, is unconstitutionally vague, thus abrogating *Taylor*. *Davis*, 139 S. Ct. at 2336; *Manners v. United States*, 947 F.3d 377, 379 (6th Cir. 2020). The Sixth Circuit has held that *Davis* announced a new rule of constitutional law that retroactively applies to cases on collateral review. *In re Franklin*, 950 F.3d 909, 910-11 (6th Cir. 2020).

## IV. ANALYSIS

### A. Procedural Default

The respondent contends that the movant procedurally defaulted his *Davis* claim and that he cannot excuse his default by showing cause and prejudice or actual innocence. (Docket Entry No. 13, at 30.) In response, the movant concedes that his *Davis* claim is in procedural default because, in 2009, he did not raise a void-for-vagueness attack against his conviction. However, he asserts that he can overcome default by showing cause and prejudice. (Docket Entry No. 16, at 2.)

A § 2255 motion is not a substitute for a direct appeal. Consequently, as a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982), or demonstrates that he is "'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166.

To show cause, a movant must "show that some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "[A] claim that 'is so novel that its legal basis is not reasonably available to counsel'

11

may constitute cause for a procedural default." *Bousley*, 523 U.S. at 622 (citation omitted). A "new" constitutional claim is not "reasonably available" if the Supreme Court decision (1) explicitly overrules one of the Court's precedents; (2) overturns "'a longstanding and widespread practice to which the Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved'"; or (3) disapproves a practice that the Court "'arguably has sanctioned in prior cases.'" *Reed v. Ross*, 468 U.S. 1, 17 (1984) (citations omitted). "By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a...court to adopt the position that [the Supreme Court] has ultimately adopted," and, consequently, such a case will satisfy the cause requirement. *Id*. As to the third category, whether the attorney had a reasonable basis for pressing a claim challenging a practice that the Supreme Court has arguably sanctioned in prior cases, "depends on how direct th[e] Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how strong the available support is from sources opposing the prevailing practice." *Id*. at 17-18. However, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (citation and internal quotation marks omitted).

To show prejudice to excuse default, a movant must show "'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 168. "The Supreme Court has not defined the level of prejudice necessary to overcome procedural default but it has held that the level is 'significantly greater than that necessary under the more vague inquiry suggested by the words plain error.'" *United States v. Walker*, 214 F. Supp. 3d 866, 872 (N.D. Cal. 2016) (quoting *Murray*, 477

12

U.S. at 493-94) (citation and internal quotation marks omitted).[3]  On collateral review, to demonstrate actual prejudice, the movant "'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Napier v. United States*, 159 F.3d 956, 962 (6th Cir. 1998) (quoting *Frady*, 456 U.S. at 170) (emphasis in original).

"To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (citations and internal quotation marks omitted).  "Actual innocence" "means factual innocence, not mere legal insufficiency.  In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make."  *Id*. at 623-24 (citation omitted); *Vanwinkle v. United States*, 645 F.3d 365, 370 (6th Cir. 2011) (stating that movant "must show his actual innocence in light of all the evidence, including the undisputed circumstances described in the presentence report," and that movant's "plea 'serve[d] as an admission that he [wa]s not innocent of the crimes charged.'") (citations omitted).  "[W]here the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges."  *Id*. at 624.

Here, the movant has satisfied the cause requirement, as his argument--that his § 924(c) conviction and sentence under Count Fifteen are illegal because the residual clause of § 924(c)(3)

---

[3]Under a plain error standard of review on direct review, a defendant must show "(1) there is error; (2) the error was 'clear or obvious rather than subject to reasonable dispute'; (3) it affected the defendant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) it seriously affected the fairness, integrity or public reputation of judicial proceedings."  *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011).

is unconstitutionally vague--was not reasonably available to him at the time he was sentenced in November 2008. In doing so, the movant has satisfied the first and second *Reed* categories. The movant filed his direct appeal in 2008, which was dismissed by the Sixth Circuit on September 29, 2010. On January 9, 2015, the Supreme Court in *Johnson v. United States*, 574 U.S. 1069 (2015) directed the parties in that case to file supplemental briefs to address whether the residual clause in the ACCA, 18 U.S.C. § 924(e)(B)(ii), was unconstitutionally vague. On June 26, 2015, the Supreme Court expressly overruled *James v. United States*, 550 U.S. 192 (2007) and *Sykes v. United States*, 564 U.S. 1 (2011), which had upheld the similar residual clause in the ACCA. *Johnson*, 576 U.S. at 606. Thus, the movant's residual-clause challenge under § 924(c)(3) would have been foreclosed prior to the Supreme Court's decision in *Johnson*, 576 U.S. at 606, which overruled previous case authority related to the residual clause. *See Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018) ("Raines had cause for failing to raise his *Johnson* claim on direct appeal. After all, *Johnson* was not decided until June 26, 2015, well after Raines's direct appeal was decided on June 11, 2013."). Likewise, *Davis*, which was an extension of *Johnson*, also could not have been anticipated at the time the movant was sentenced and when he filed his direct appeal in 2008. *See United States v. Garcia*, 811 F. App'x 472, 480 (10th Cir. 2020) (finding cause for failure to assert *Davis* claim); *United States v. Chea*, No. 98-CR-20005-1 CW, 2019 WL 5061085, at *6 (N.D. Cal. Oct. 2, 2019) (the defendant satisfied the cause requirement as his argument that his § 924(c) convictions and sentence were illegal because the residual clause of § 924(c)(3) was unconstitutionally vague was not reasonably available to him at the time he was sentenced); *United States v. McMillen*, No. 09CR0710-JLS, 2019 WL 4602237, at *4 (S.D. Cal. Sept. 23, 2019); *Hammoud v. United States*, No. 8:19-CV-2541-T-27TGW, 2020 WL 3440649, at *3 (M.D. Fla. June 23, 2020) (finding that at

14

the time of the defendant's direct appeal, "a claim that his § 924(c) conviction was invalid because the statute's residual clause was unconstitutional was 'so novel that its legal basis [was] not reasonably available to counsel' and therefore his failure to raise the claim 'is sufficiently excusable to satisfy the cause requirement." (citation and footnote omitted)); *Howie v. United States*, No. 3:06-CR-50-RJC-1, 2019 WL 4743724, at *5 (W.D.N.C. Sept. 27, 2019) (collecting cases).

The respondent contends that "within and out of circuit precedent indicates that claims involving the constitutionality of 18 U.S.C. § 924(c)(3)(B)'s residual clause were 'available' to petitioners (and thus not novel) well before the Supreme Court's decision in *Davis*," citing *United States v. McCarron*, No. 15-CR-257, 2020 WL 2572197, at *4 (E.D.N.Y. May 20, 2020); *Mizell v. United States*, No. 19-CV-6849, 2020 WL 2216561, at *3-4 (S.D.N.Y. May 6, 2020); *Speller v. United States*, No. 16-CV-1884, 2020 WL 1957414, at *3-4 (S.D.N.Y. Apr. 23, 2020); and *Daniel v. United States*, No. 1:15-cr-35, 2016 WL 7045446, at *2 (N.D. Ohio Dec. 5, 2016), where these courts concluded that the petitioners could not show cause to excuse procedural default of a *Davis*-based claim. (Docket Entry No. 13, at 31.) However, the respondent's reliance on these cases is misplaced as each default occurred after *Johnson* was decided in June 2015. *See McCarron*, 2020 WL 2572197, at *1(where defendant pled guilty in 2017 and was sentenced in June 2018); *Mizell*, 2020 WL 2216561, at *2 (where defendant was sentenced on July 10, 2015 and his direct appeal was pending into late 2016); *Speller*, 2020 WL 1957414, at *2 (where defendant was sentenced two days before *Johnson* issued and did not appeal); and *Daniel*, 2016 WL 7045446, at *1, 2 (where defendant was sentenced on September 14, 2015, and the district court concluded that the "*Johnson* claim would not have been novel on appeal; the Supreme Court published the *Johnson* decision several months before Daniels was sentenced."). Here, the movant was sentenced long before the holdings

15

in *Johnson* and *Davis*. *See United States v. Lewis*, No. 10-CR-622 (ADS), 2020 WL 2797519, at
*6 (E.D.N.Y. May 22, 2020) ("No procedural default question exists here, because the Defendant
was sentenced prior to the holdings in *Johnson* and *Davis*.").

Accordingly, the court finds that the movant has established cause, as at the time of his direct
appeal, a claim that his § 924(c) conviction was invalid because the statute's residual clause was
unconstitutional was "so novel that its legal basis [was] not reasonably available to counsel" and
therefore his failure to raise the claim "is sufficiently excusable to satisfy the cause requirement."
*Reed*, 468 U.S. at 16, 17.

The movant has also established the prejudice requirement. Count Fifteen in the Third
Superseding Indictment charged the movant with carrying and using a firearm during and in relation
to a crime of violence and in furtherance thereof. The "crime of violence" that was the predicate for
this charge is identified as RICO conspiracy,[4] as charged in Count One. (Criminal Case No. 3:07-cr-
00005, Docket Entry No. 770, at 1-13, 27.) The movant argues that, based upon *Davis*, RICO
conspiracy no longer qualifies as a crime of violence, as that term is defined in § 924(c), and
therefore RICO conspiracy cannot be sustained as a predicate crime of violence for purposes of a
conviction under the residual clause of § 924(c)(3)(B), or within the scope of the force or elements
clause of § 924(c)(3)(A). Case authority supports this claim. *See United States v. Green*, No.
17-10346, 2020 WL 4592245, at *2, -- F.3d --, -- (11th Cir. Aug. 11, 2020) ("RICO conspiracy is

---

[4]The Sixth Circuit has stated that "'a RICO conspiracy charge does not require proof that the
defendant committed any predicate acts' and 'does not even require proof that the defendant agreed
to commit two predicate acts himself, or even that any overt acts have been committed,'" but rather
it "'merely requires proof that the defendant intended to further an endeavor which, if completed,
would satisfy all of the elements of a substantive [RICO] criminal offense [and] it suffices that he
adopt the goal of furthering or facilitating the criminal endeavor.'" *United States v. Rios*, 830 F.3d
403, 424 (6th Cir. 2016) (citations and internal quotation marks omitted).

16

virtually indistinguishable from a conspiracy to commit Hobbs Act robbery. . . . So as with a conspiracy to commit Hobbs Act robbery, the elements of a RICO conspiracy focus on the *agreement* to commit a crime, which does not 'necessitate[ ] the existence of a threat or attempt to use force.' Therefore, RICO conspiracy does not qualify as a crime of violence under § 924(c)(3)." (citation omitted and emphasis in original)); *United States v. Jones*, 935 F.3d 266, 271 (5th Cir. 2019) ("RICO conspiracy only requires that (1) 'two or more people agreed to commit a substantive RICO offense'; and (2) 'the defendant knew of and agreed to the overall objective of the RICO offense.' Accordingly, RICO conspiracy is not a crime of violence." (citation omitted)); *United States v. Davis*, 785 F. App'x 358, 360 (9th Cir. 2019) (vacating the defendant's § 924(c) conviction, the Ninth Circuit explained, "Here, [defendant] was convicted of violating § 924(c) for possessing or carrying a firearm in furtherance of a 'crime of violence' --namely, a RICO conspiracy. There is no real dispute that [defendant's] § 924(c) conviction depended upon the statute's now-unconstitutional residual clause." (footnote omitted)); *United States v. Johnson*, No. S516CR281PGG, 2019 WL 4451320, at *27 n.32, -- F. Supp. 3d --, -- (S.D.N.Y. Sept. 17, 2019) ("Because racketeering conspiracy could only constitute a 'crime of violence' by virtue of the residual clause that *Davis* found unconstitutionally vague, the racketeering conspiracy charged in Count One is not a 'crime of violence.'"); *Sandoval v. United States*, 430 F. Supp. 3d 71, 73 (W.D.N.C. 2019) ("Petitioner's § 924(c) conviction can only withstand *Johnson* and *Davis* if the predicate offenses satisfy § 924(c)'s force clause. . . . Racketeering conspiracy does not have as an element the use, attempted use, or threatened use of physical force."); *United States v. Villegas-Rosa*, Case No. 4:17-00016-CR-RK, 2019 WL 3323134, at *4 (W.D. Mo. July 24, 2019) (granting defendant's motion to dismiss portion of counts that alleged RICO conspiracy as a predicate crime

17

of violence under 18 U.S.C. § 924(c).  For these reasons, the movant contends that his conviction under § 924(c) must be set aside.  The movant contends that "[a]bsent that § 924(c) conviction, he would be left with a sentence of 20 years, rather than life," and would therefore "be plainly prejudiced to lose the chance to litigate his *Davis* claim."  (Civil Case No. 3:19-cv-00719; Docket Entry No. 16, at 4.)

Apparently conceding that RICO conspiracy cannot be considered a crime of violence under § 924(c)(3), the respondent does not address the merits of the movant's claim or argue that RICO conspiracy qualifies as a crime of violence under the elements clause, § 924(c)(3)(A), but instead insists that the movant's claim is foreclosed by procedural default and the waiver provision in the plea agreement.  The respondent argues that the movant cannot show actual prejudice because, if the movant "argued at the time that § 924(c)(3)(B) was unconstitutionally vague, and that RICO conspiracy could not satisfy § 924(c)(3)(A), the result would likely have been that [the movant] would have pleaded guilty to the other § 924(c) charge (Count Six), which was predicated on three crimes that satisfy § 924(c)(3)(A) and were thus unaffected by *Davis*."  (Docket Entry No. 13, at 34.) The respondent contends that the movant "therefore cannot show that his attorney's failure to raise a *Davis*-type claim on direct appeal worked to his 'actual and substantial disadvantage,'" citing *Nagi v. United States*, 90 F.3d 130, 136 (6th Cir. 1996).  *Id*.

In *Nagi*, the petitioner and the government reached a plea bargain that called for a sentence between 14 and 20 years, and in exchange for the petitioner's guilty plea, the government agreed to dismiss some of the charges against him.  90 F.3d at 133.  The petitioner faced 30 years to life imprisonment if convicted on all counts.  *Id*.  In calculating the petitioner's base offense level, the wrong version of the United States Sentencing Guidelines ("the Guidelines") was used, resulting in

18

a guideline range of 188-235 months of incarceration. *Id*. As a result, the court sentenced the petitioner to 204 months, or 17 years, imprisonment, which was 69 months higher than the maximum sentence allowable under the correct version of the Guidelines. *Id*. at 134. The petitioner did not raise an objection concerning the use of the incorrect Guidelines to the trial court. *Id*. at 133. In his motion to vacate or correct sentence challenging the use of the wrong version of the Guidelines, the petitioner asserted an ineffective assistance of counsel claim to excuse his procedural default. *Id*. at 134-35. After finding that the petitioner could not show that his counsel's alleged ineffective assistance established cause to excuse his procedural default, the Sixth Circuit concluded that, even if the petitioner were able to show cause, "the use of the [incorrect] Guidelines did not work to [the petitioner's] 'actual and substantial disadvantage'" because the government maintained that it would not have entered into the plea agreement, had the petitioner insisted upon a lower sentencing range, and thus, the petitioner could not show actual prejudice. *Id*. at 136 (citation omitted).

However, in *United States v. Dean*, 169 F. Supp. 3d 1097 (D. Or. 2016), the district court, addressing the petitioner's *Johnson* claim under § 2255 that challenged the calculation of his advisory sentencing range, rejected *Nagi*'s application by noting that *Nagi* "did not involve a constitutional violation--alleged or otherwise--in the Guidelines calculation." *Id*. at 1112.[5] Here, the movant's claim undeniably pertains to a constitutional violation, as § 924(c)(3)(B) has been determined to be unconstitutionally vague, and the respondent does not dispute that RICO conspiracy therefore no longer qualifies as a crime of violence under § 924(c). "'Actual prejudice' does not

---

[5]The *Dean* court noted that *Nagi* preceded the Supreme Court's decision in *Peugh v. United States*, 569 U.S. 530 (2013), where the Supreme Court held that sentencing a defendant under Guidelines promulgated after his offense violated the *Ex Post Facto* Clause when the new version provided for a higher sentencing range than the version in place at the time of the offense. *Dean*, 169 F. Supp. 3d at 1112.

mean errors at a criminal defendant's sentencing that created a mere possibility of prejudice, but rather that the errors worked to the defendant's actual and substantial disadvantage, infecting his entire sentencing with error of constitutional dimensions." *Wade v. United States*, No. 1:04-CR-134, 2010 WL 2757135, at *4 (E.D. Tenn. July 13, 2010) (citing *Frady*, 456 U.S. at 170). The movant has demonstrated that he would suffer resulting, actual prejudice from his conviction on Count Fifteen as his sentence would be significantly less if the conviction on that count were vacated. *See United States v. Brown*, 415 F. Supp. 3d 901, 906 (N.D. Cal. 2019) ("As every judge in this District to have considered the issue has concluded, a defendant's default of his challenge to the constitutionality of 18 U.S.C. § 924(c)'s residual clause is excused by cause and prejudice."); *United States v. Carter*, 422 F. Supp. 3d 299, 310 (D.D.C. 2019) ("[A] § 2255 petitioner challenging a sentence suffers prejudice when, in light of new case law, the petitioner 'would have been sentenced to prison for [several years] less than the imposed sentence.'" (citation omitted)).[6] The respondent only speculates that the movant would have pleaded guilty to Count Six. The court will only look at the underlying predicate offense alleged in Count Fifteen, which is RICO conspiracy. *See Oliver v. United States*, No. 3:19-CV-00774, 2020 WL 3637632, at *3 (M.D. Tenn. July 6, 2020) (in vacating petitioner's conviction for murder under 18 U.S.C. §§ 924(c) and 924(j) that was based upon the predicate offense of Hobbs Act conspiracy, the district court stated, "[T]he Court is hesitant to use the Factual Basis to revive counts that the Government agreed to dismiss. Otherwise, it would be possible for the Court to retroactively find [the petitioner] guilty of several crimes that he did not agree to plead guilty to.").

---

[6]The court also notes that, unlike in *Nagi*, the movant here does not assert an ineffective assistance of counsel as a standalone claim or otherwise.

As the respondent does not dispute the merits of movant's claim, and based upon the case authority establishing that RICO conspiracy no longer qualifies as a crime of violence under § 924(c), the movant has met his burden of showing that the residual clause of § 924(c)(3) is unconstitutionally vague and his conviction of that offense "worked to his actual and substantial disadvantage," because it resulted in the imposition of a life sentence, instead of 20 years of imprisonment.

Accordingly, because the movant has shown cause and prejudice, his procedural default of his *Davis* claim does not preclude his current § 2255 motion.

## B. Waiver

The respondent contends that the movant's motion to vacate under § 2255 is barred by the plea agreement's post-conviction waiver provision and also that the movant's waiver provision is enforceable under *Slusser v. United States*, 895 F.3d 437 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1291 (2019). (Docket Entry No. 13, at 8, 18, 22-23.) In response, the movant contends that (1) even if the waiver applies by its own terms, the waiver is unenforceable, pursuant to *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006) and *Vowell v. United States*, 938 F.3d 260 (6th Cir. 2019), because his life sentence exceeds the permissible sentence for Count Fifteen, which is no punishment at all, and (2) based upon its terms, the waiver does not apply to a *Davis* claim, as a Sixth Circuit panel has already held regarding a similar waiver. (Docket Entry No. 16, at 4-5.)

"It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (citing *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)). The Sixth Circuit has specifically held that the waiver of the right to bring a collateral challenge to a sentence under

21

§ 2255 is valid where the waiver is entered "knowingly, intelligently, and voluntarily." *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) ("When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bringing a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255."). A valid waiver bars a defendant from bringing "any type of claim not excluded by the agreement." *United States v. Brice*, 373 F. App'x 561, 562 (6th Cir. 2010) (citing *Davila*, 258 F.3d at 451). "[C]ourts will enforce appeal waivers even when a legal development makes it likely that the defendant would receive a lower sentence were the defendant resentenced under the new law, and even when the legal change affects constitutional rights." *United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017).

As discussed *infra*, the court concludes that the movant's appeal does not come within the terms of the waiver clause and, alternatively, that even if the waiver applies by its own terms, the waiver is unenforceable.

### 1. Scope of Agreement

The plea agreement's express waiver of appellate rights stated:

> Defendant further understands he is waiving all appellate rights that might have been available if he exercised his right to go to trial. It is further agreed that (i) defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the statutory maximum penalty of life imprisonment and (ii) the government will not appeal any sentence imposed. Such waiver does not apply, however, to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.

(Criminal Case No. 3:07-cr-00005, Docket Entry No. 885, at 14-15.)

The movant contends that the language used in the waiver indicates that "sentence" means "the sentence imposed," not "the conviction and the sentence imposed," and that prosecutors must

use clear phrasing that identifies both "conviction" and "sentence" if they want to procure a waiver as to both. (Docket Entry No. 16, at 7, 10.) In response, the respondent contends that the language of the waiver mirrors the language of § 2255 itself, and its scope is coextensive with the statutory remedy, which has a well-established meaning where the term "sentence" extends to cover collateral attacks on convictions. (Docket Entry No. 13, at 12, 13.)

The court agrees with the respondent regarding the general proposition that § 2255 encompasses challenges to both a defendant's conviction and sentence. However, that does not mean that parties may not limit the scope of a defendant's rights under § 2255 that he is waiving when fashioning a plea agreement. Any "[a]mbiguities in a plea agreement must be construed against the government." *United States v. Fitch*, 282 F.3d 364, 367 (6th Cir. 2002); *see United States v. Goodloe*, 388 F. App'x 500, 503 (6th Cir. 2010) (waiver of the right to file "any collateral attack" did not waive the right to file for a sentence reduction under 18 U.S.C. § 3582(c)(2) because the waiver was deemed ambiguous). At the plea hearing, the court specifically advised the movant that he was waiving his "right to appeal the sentence or to file a separate case attacking the sentence of any sentence [sic] that's within or below statutory maximum penalty of life imprisonment." (Criminal Case No. 3:07-cr-00005, Docket Entry No. 1046, at 21.) The court did not make any mention that the waiver also included the movant's conviction.

Citing a litany of cases from district courts from various circuits, the movant asserts that "prosecutors across the country who want a defendant to waive both the right to attack a conviction and the right to attack the sentence regularly present a waiver that says the defendant 'waive[s] his right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [his] conviction[] and/or resulting sentence.'" (Docket Entry No. 16, at 8.) *See id*. at 8-9 (collecting

23

cases). This court's own research has also revealed various cases in this circuit that have involved plea agreement waivers using similar language. *See United States v. Toth*, 668 F.3d 374, 376, 378 (6th Cir. 2012) ("the defendant knowingly and voluntarily waives all of his appellate rights for both his conviction and the resulting sentence."); *Cox v. United States*, 695 F. App'x 851, 853 (6th Cir. 2017) ("Cox entered into his plea agreement and expressly 'waive[d] the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [his] conviction(s) and/or resulting sentence.'"); *Hamilton v. United States*, 566 F. App'x 440, 441 (6th Cir. 2014) ("reserving the right to appeal whatever sentence the district court imposed but waiving his right to 'contest or collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 or otherwise, including but not limited to, claims of ineffective assistance of counsel.'"); *Helton v. United States*, No. 2:16-CR-030, 2020 WL 4550924, at *1 (E.D. Tenn. Aug. 6, 2020) ("Petitioner further agreed that he would 'not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.'"); *Leatherwood v. United States*, No. 3:10-CR-7, 2020 WL 3273023, at *5 (E.D. Tenn. June 17, 2020) ("Leatherwood executed a plea agreement in which he 'knowingly and voluntarily' waived 'the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [his] conviction(s) and/or resulting sentence.'"); *Elliot v. United States*, No. 314CR085TWPCCS5, 2019 WL 909446, at *3 (E.D. Tenn. Feb. 22, 2019) ("[T]he defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence."); *Ridley v. United States*, No. 3:16-CV-01436, 2018 WL 3426182, at *1 (M.D. Tenn. July 16, 2018)

24

("Petitioner 'knowingly waive[d] the right to challenge his conviction or the sentence imposed in any collateral attack, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241.'" (emphasis omitted)); *United States v. Wall*, 230 F. Supp. 3d 771, 773 (E.D. Mich. 2017) ("In his Plea Agreement, Defendant acknowledged that he 'knowingly and voluntarily waive[d] that right [to collaterally attack his sentence] and agree[d] not to contest his conviction or sentence in any post-conviction proceeding, including--but not limited to--any proceeding under 28 U.S.C. § 2255.'"); *United States v. Vanover*, No. 2:10-CR-14-DLB-REW-1, 2016 WL 11212439, at *3 (E.D. Ky. Dec. 5, 2016), *report and recommendation adopted*, No. CR 10-14-DLB-REW-1, 2017 WL 1356328 (E.D. Ky. Apr. 11, 2017) ("'The Defendant waives the right to ... attack collaterally the guilty plea, conviction, and sentence.'"); *United States v. Thompson*, No. CIV.A. 3:08CV-306-C, 2008 WL 6506506, at *3 (W.D. Ky. Nov. 7, 2008), *report and recommendation adopted*, No. CIV.A. 08-306-C, 2009 WL 1917073 (W.D. Ky. July 1, 2009) ("'The Defendant knowingly and voluntarily waives the right . . . (b) to contest or collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 or otherwise, including any claims or ineffective assistance of counsel.'").    The court finds these cases illustrative as to the belief shared by prosecutors in the importance of specifying that a defendant is waiving his right to collaterally attack *both* his conviction *and* sentence.   Otherwise, the inclusion of the term "conviction" in these collateral-attack waivers would be redundant.

Recently, in *In re Brooks*, 2020 U.S. App. LEXIS 6371, at *3-4 (6th Cir. Feb. 28, 2020), where a petitioner was seeking authorization to file a second or successive § 2255 motion to challenge his § 924(c) conviction under *Davis*, the Sixth Circuit determined that the waiver in his plea agreement did not bar him from filing a second or successive motion, as it did not provide that

25

he waived the right to challenge his convictions.  There, the waiver provision provided that the petitioner "'knowingly waives the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255.'"  *Id*. at *2.  The court rejected the government's argument that the petitioner was not entitled to authorization to file a second or successive § 2255 motion in view of the waiver in his plea agreement, noting that "the waiver provides that [the petitioner] waives only 'the right to challenge [his] *sentence*'; it does not provide that he also waives the right to challenge his *convictions*--including his § 924(c) conviction that he seeks to challenge here."  *Id*. at *3 (emphasis in original).  The Sixth Circuit held that, "[b]ecause [the petitioner] seeks to challenge only his § 924(c) *conviction*, we find that the present motion is not barred by the collateral-attack waiver.  *Id*.

Thus, based upon the numerous cases reciting examples of plea waivers specifying that a defendant waived his right to collaterally attack his conviction and/or resulting sentence under 28 U.S.C. § 2255 or other similar language, the proposition that any ambiguities in a plea agreement must be construed against the government, and the Sixth Circuit's decision in *In re Brooks*, the court concludes that the movant's motion challenging his conviction is not barred by the collateral-attack waiver.[7]

---

[7]The respondent asserts that, in *In re Brooks*, the petitioner first argued in his reply brief that a motion seeking to vacate his conviction fell outside the scope of the provision waiving his right to move to vacate his sentence and that, as a result, the government did not have an opportunity to respond to that argument on the merits before the Sixth Circuit issued its authorization order. (Docket Entry No. 13, at 17.)  Further, the respondent argues that, when the Sixth Circuit did rule, there was no mechanism for the government to seek further review, as the authorization order was not appealable pursuant to 28 U.S.C. § 2244(b)(3)(E).  *Id*.  However, this argument is misleading, as the petitioner filed his reply on November 8, 2019 (No. 19-6189, Docket Entry No. 6), and the government never sought to file a sur-reply addressing the petitioner's newly asserted scope-of-waiver argument before the Sixth Circuit, which did not issue its decision until February 28, 2020.

## 2. Enforceability of Waiver Clause

In granting the movant's motion for authorization to file a second or successive § 2255 motion, the Sixth Circuit noted the tension between *Caruthers*/*Vowell* and *Slusser*, regarding the enforceability of collateral-attack waivers. (Docket Entry No. 4, at 4-5.) The Court stated that the movant's reliance on *Caruthers* constituted "'a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" *Id*. at 5 (citations omitted).

In *Caruthers*, a 2006 opinion, the defendant argued on direct appeal that his burglary convictions were not "violent felonies" within the meaning of the ACCA and that, therefore, his fifteen-year sentence exceeded the statutory maximum of ten years (as set forth in § 924(a)(2)) for an unenhanced § 922(g)(1) conviction. 458 F.3d at 464. The defendant argued that, even if the plea agreement's waiver provision encompassed his appeal, the waiver could not preclude attacking a sentence on the grounds that it exceeded the statutory maximum. *Id*. at 471. The Sixth Circuit concluded that "an appellate waiver does not preclude an appeal asserting that the statutory-maximum sentence has been exceeded." *Id*. at 472.

In *Slusser*, a 2018 opinion, the petitioner filed a motion under § 2255, arguing that his prior convictions no longer qualified as ACCA-predicate offenses after the Supreme Court in *Johnson* invalidated the ACCA's residual clause. 895 F.3d at 438-39. Finding that the petitioner waived his right to challenge his sentence through a § 2255 motion as part of his plea agreement, the Sixth Circuit concluded that "[t]he indication in *Caruthers* that appellate waiver does not preclude a collateral attack on an above-statutory-maximum sentence was *dicta*," and held instead that a change in the law did not affect the enforceability of a waiver of collateral review. *Id*. at 440.

27

A year later in *Vowell*,[8] the Sixth Circuit clarified its prior decision in *Caruthers*, 458 F.3d at 472, explaining that *Caruthers* determined that an individual cannot waive "the right to challenge a sentence on the ground that it exceeds the statutory maximum penalty, but it did not answer the separate question of whether a claim that an ACCA enhancement has been improperly applied qualifies as a claim that the sentence exceeds the statutory maximum." *Vowell*, 938 F.3d at 265. Noting that the *Slusser* court's conclusion "that a criminal defendant's knowing and voluntary appellate waiver prohibited him from asserting a § 2255 claim that, under *Johnson v. United States*, he was no longer a career offender and, therefore, his sentence exceeded the statutory maximum for his crime," the *Vowell* court held that the *Slusser* decision rested on the "misunderstanding that *Caruthers*'s appellate waiver statement was dicta, and therefore not binding." *Vowell*, 938 F.3d at 266. Because the *Caruthers* holding was not mere dicta, and because a subsequent panel decision cannot overrule an earlier panel's decision, *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985), the court concluded that, "under the still-applicable and binding rule endorsed in *Caruthers*, defendants should continue to be able to challenge statutorily excessive sentences, regardless of their appellate waivers." *Vowell*, 938 F.3d at 267. The court also noted that other decisions from the Sixth Circuit and the Supreme Court holding that "subsequent changes in the law d[o] not render an otherwise valid waiver unknowing or involuntary, . . . . say nothing of whether an appellate waiver encapsulates a subsequent change of the law which would otherwise render a defendant or petitioner's sentence statutorily excessive, i.e., *illegal*." *Id*. at 267-68 (citations omitted and emphasis in original).

_____

[8] The author of the opinion in *Slusser* also sat on the panel in *Vowell* and joined in the decision.

The court in *Vowell* therefore held that "a defendant or petitioner may challenge his sentence as being statutorily excessive based on a subsequent change in the law, even if the waiver was otherwise knowing and voluntary." *Id.* at 268. The *Vowell* court also answered the question left pending by *Caruthers* and held that the applicable sentencing statutes "clearly establish" that "a petitioner's allegedly incorrect designation as a career offender under the ACCA renders his sentence in excess of the statutory maximum." *Id.* That is, if a petitioner who is incorrectly designated as a career offender and sentenced to fifteen years rather than the otherwise applicable maximum sentence of ten years, then the sentence he receives exceeds the applicable statutory maximum, and a waiver of his right to challenge such a sentence is invalid. This court has previously determined that, under *Vowell*, *Caruthers* is the controlling authority in determining the enforceability of a waiver, where a petitioner challenges his sentence as being statutorily excessive based on a subsequent change in the law. *See Daniels v. United States*, No. 3:16-CV-01551, 2019 WL 4167325, at *4 (M.D. Tenn. Sept. 3, 2019) (applying *Vowell* and concluding that the waiver at issue did not operate as a waiver of the petitioner's claims under *Johnson* or *Davis*); *see also Brown v. United States*, No. 1:16CR360, 2020 WL 3512835, at *4 (N.D. Ohio June 29, 2020) ("While a Defendant cannot challenge an appellate waiver based on a change of law, defendants may challenge a statutorily excessive sentence on a change of law." (citing *Vowell*, 938 F.3d at 268)).

Here, the movant argues that, under *Caruthers* and *Vowell*, his waiver cannot be enforceable because his penalty of life imprisonment necessarily exceeds the penalty authorized by law, which is no penalty at all, as his conviction on Count Fifteen is invalid pursuant to *Davis*.[9] In *Davis*, the

---

[9]The respondent, citing *Howard v. United States*, No. 3:16-CV-01471, 2019 WL 632903, at *5 (M.D. Tenn. Feb. 13, 2019); *Davis v. United States*, No. 3:16-CV-00872, 2019 WL 1533443, at *4 (M.D. Tenn. Apr. 9, 2019), *certificate of appealability denied*, No. 19-5632, 2019 WL 6717027

29

Supreme Court stated, "a vague law is no law at all" and must be treated as "a nullity." 139 S. Ct. at 2323. As the respondent does not dispute that it solely relies on the now-invalidated residual clause, § 924(c)(3)(B), to support the movant's conviction under § 924(c) in Count Fifteen, that conviction "must be set aside." *See United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir.), *cert. denied sub nom. Robinson v. United States*, 140 S. Ct. 317 (2019) (finding that based upon *Davis* defendant's conviction for conspiracy to commit Hobbs Act robbery "must be set aside" as defendant's conviction rested solely on the § 924(c)'s now-invalidated residual clause). Accordingly, because the movant's conviction on Count Fifteen is invalid, his sentence therefore exceeds the statutory maximum, and, thus, under *Vowell*, the waiver is not enforceable.

The respondent argues that, even if the waiver-related statements from *Vowell* and *Caruthers* controlled, they would be inapplicable here because those cases contemplated situations in which a defendant or petitioner claimed that he was sentenced to fifteen years or more despite a statutory maximum of ten years, whereas the life sentence the movant received on Count Fifteen plainly did not exceed the statutory maximum under § 924(c). (Docket Entry No. 13, at 24.) Thus, the respondent argues that the movant cannot invoke this exception to the waiver by arguing that, if his § 924(c) conviction were invalid in light of *Davis*, the statutory maximum for that count would thereby fall to zero, such that any sentence would then exceed the authorized maximum. Citing *United States v. Worthen*, 842 F.3d 552, 555 (7th Cir. 2016), the respondent argues that the movant's argument is flawed because the validity of the movant's appellate waiver turns on the validity of his

---

(6th Cir. Oct. 4, 2019), asserts that this court previously rejected this argument, holding that it was foreclosed by *Slusser*. (Docket Entry No. 13, at 24.) However, in these cases, this court's reliance on *Slusser* predated the Sixth Circuit's published opinion in *Vowell*, which this court subsequently adopted in *Daniels*, 2019 WL 4167325, at *4, as controlling authority.

conviction; that is, the court must adjudicate the merits of the movant's motion before deciding whether his sentence exceeds any statutory maximum. (Docket Entry No. 13, at 24-25.)

In *Worthen*, the defendant entered into a plea agreement with the government under which he agreed to plead guilty to Hobbs Act robbery under 18 U.S.C. §§ 1951 and causing death while using or carrying a firearm during a crime of violence under 18 U.S.C. §§ 924(j) and further agreed to waive his appeal rights in exchange for the government's agreeing to drop other charges and promising to not seek the death penalty. *Worthen*, 842 F.3d at 554. Despite the appeal waiver, the defendant appealed his conviction, arguing that Hobbs Act robbery--the predicate offense for his § 924(j) conviction--was not a "crime of violence" and therefore his § 924(j) conviction was invalid. *Id.* Specifically, the defendant argued that he received 60 years of imprisonment for committing both a robbery and a crime of violence, but the crime-of-violence conviction was invalid, thereby leaving only the robbery conviction, which carried a maximum sentence of 20 years of imprisonment. *Id.* at 555. The Seventh Circuit stated that appeal waivers are generally enforceable and preclude appellate review, but recognized a few narrow exceptions to the rule, such as where a defendant contests a sentence that exceeds the statutory maximum for the crime committed. *Id.* at 554. The court noted that it considered a defendant's appeal--irrespective of the defendant's appeal waiver--in *United States v. Gibson*, 356 F.3d 761 (7th Cir. 2004), where the defendant was sentenced to 262 months, although the crime carried a maximum penalty of only 60 months. *Id.* at 555. The court explained that reaching the conclusion that the defendant's sentence exceeded the statutory maximum "required nothing more than comparing the sentence that the statute allowed to the sentence actually imposed," and that it did not require the court "to determine that the underlying conviction was invalid beforehand," as the defendant in *Worthen* was seeking to do. *Id.*

31

In rejecting Worthen's argument to find the appeal waiver unenforceable, the Seventh Circuit stated:

> To be clear, the crux of Worthen's argument is that the validity of his appeal waiver depends on the validity of his conviction. That argument is entirely circular. Indeed, to determine whether Worthen's crime-of-violence conviction is invalid, we would have to take the appeal in the first place. Then, only if we agree with Worthen and conclude that his conviction is in fact invalid would we find that Worthen's sentence exceeds the statutory maximum, which in turn would mean that Worthen did not waive his appeal rights. So the rule would be that an appeal waiver is enforceable unless the appellant would succeed on the merits of his appeal. That cannot be the law.
>
> For if that were the law, then appeal waivers would lose all effect. That's because we would have to consider an appeal's merits in every case. In doing so, if we were to conclude that the defendant's conviction *was not* valid, then any sentence imposed necessarily would exceed the statutory maximum because there can be no punishment without liability; in that scenario, we would hold that the defendant did not waive his right to an appeal. And if we were to conclude that the defendant's conviction *was* valid, then we would dismiss the appeal as waived so long as the sentence falls within the permissible statutory range; in that case, the appeal waiver would be irrelevant because we would have decided the appeal on the merits anyway. Consequently, this rule would eviscerate the right to waive an appeal.

*Id*. (emphasis in original).

The respondent's reliance on *Worthen* is not persuasive. First, while *Worthen* may be more consistent with *Slusser*, this court has determined that *Caruthers/Vowell* is the controlling authority in this circuit. Second, the concerns mentioned in *Worthen* are not present here based on the circumstances in this action. Here, no in-depth analysis is required to determine the validity of the movant's conviction. The respondent does not dispute the merits of the movant's § 2255 motion; thus, there are no questions concerning any constitutional issues or statutory interpretation. *See Oliver v. United States*, 951 F.3d 841, 846-47 (7th Cir. 2020) (applying *Worthen* and noting, "The fact that § 924(c)'s residual clause is unconstitutional does not mean that all § 924(c) convictions

32

are unlawful. There is still the elements clause. To invalidate a § 924(c) conviction, a defendant must raise a constitutional challenge to the residual clause and establish that the elements clause does not cover the predicate offense. A successful claim that a § 924(c) prosecution lay beyond the government's power--and, thus, in Oliver and Ross's view, that their waivers are unenforceable-- requires a defendant to engage with both the constitutional issue and a question of statutory interpretation.").  The court also notes that the result would be incongruous to not enforce a waiver only in those cases such as where a defendant or petitioner claimed that he was sentenced to fifteen years or more despite a statutory maximum of ten years, as the respondent asserts, but to enforce the waiver here where the conviction is undisputedly invalid based upon a subsequent change of the law that rendered "a defendant or petitioner's sentence statutorily excessive, i.e., *illegal*." *Vowell*, 938 F.3d at 268. (emphasis in original).

Lastly, the respondent asserts that, even if the court were to adopt the movant's reading of *Vowell* and *Caruthers* in full, it should still enforce the waiver, as the waiver will not result in any sort of miscarriage of justice.  (Docket Entry No. 13, at 25-26.)  The court disagrees.  As the Supreme Court stated in *Davis*, "a vague law is no law at all" and must be treated as "a nullity," 139 S. Ct. at 2323, and thus, the movant's conviction "must be set aside." *Ledbetter*, 929 F.3d at 361. The respondent argues that the waiver provision was part of a bargained-for exchange in which the movant obtained valuable and significant concessions and that the movant admitted to the facts underlying Counts Three, Four, Five, and Six as part of his plea agreement, facts which would have established alternative predicates for the § 924(c) charge in Count Six.  (Docket Entry No. 13, 26-27.)  However, the respondent is free to make these arguments at resentencing.

### C.  Count Fifteen–18 U.S.C. § 924(c)

The respondent does not dispute that RICO conspiracy cannot be considered a crime of violence under the now-invalidated residual clause of § 924(c)(3). Nor does the respondent argue that RICO conspiracy qualifies as a crime of violence under the elements clause, § 924(c)(3)(A). Thus, there is no real dispute that the movant's § 924(c) conviction depended upon the statute's now-unconstitutional residual clause. Even if the respondent had argued otherwise, the court finds it clear that RICO conspiracy cannot qualify as a crime of violence under § 924(c)(3)(A), because it does not require proof of any element directly implicating the use of force. *Accord Green*, 2020 WL 4592245, at *2, -- F.3d --, --; *Jones*, 935 F.3d at 271; *Davis*, 785 F. App'x at 360; *Johnson*, 2019 WL 4451320, at *27 n.32, -- F. Supp. 3d --, --; *Sandoval*, 430 F. Supp. 3d at 73; *Villegas-Rosa*, 2019 WL 3323134, at *4.

Thus, the movant's conviction for RICO conspiracy does not qualify as a crime of violence under the elements clause of § 924(c)(3)(A), and it cannot qualify under the now-invalidated residual clause of § 924(c)(3)(B). There is no other qualifying predicate offense to support the conviction under section 924(c) set forth in Count Fifteen of the Third Superseding Indictment. The movant therefore has established that he is in custody on Count Fifteen in violation of the federal Constitution, and his motion to vacate will be granted, insofar as it relates to this conviction and the sentence of life imprisonment associated with it.

Vacating the movant's § 924(c) conviction in Count Fifteen of the Third Superseding Indictment will require resentencing on the remaining count of conviction. In *Davis*, the Court recognized that, "[w]hen a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts' if such an increase is warranted." 139 S. Ct. at 2336 (citing

34

*Dean v. United States*, 581 U.S. --, --, 137 S. Ct. 1170, 1176 (2017)). Issues regarding resentencing will be decided in the underlying criminal case, after the preparation of a revised presentence investigation report and appropriate briefing.

## V. CONCLUSION

Based upon *Davis*, the movant's motion to vacate, set aside, or correct sentence in accordance with 28 U.S.C. § 2255 will be granted, and the court will enter a separate order in the criminal case, No. 3:07-cr-00005, vacating the conviction on Count Fifteen in the Third Superseding Indictment, vacating the sentence in its entirety, and scheduling a resentencing.

An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge

35